## BROCKMAN et al. v. ROBERTS et al.

No. 10948—Opinnion Filed Jan. 30, 1923.

Rehearing Denied March 20, 1923.

(Syllabus.)

**1. Guardian and Ward — Sale of Ward's Land—Fraud—Statutes.**

Under section 6567, Revised Laws 1910, section 1480, Okla. Ann. Stats, 1921, a guardian must sell the real estate of his ward for cash, or part cash, and deferred payments not to exceed three years. All deferred payments must be secured by bond and mortgage on the real estate sold and such other additional security as the judge of the probate court deems necessary. A guardian is unauthorized to deliver a deed to his ward's property without receiving payment as provided for in the statute.

**2. Same.**

A guardian who delivers a deed to his ward's real property pursuant to an order of the court confirming the sale, without having received the purchase price for the real estate sold in the manner provided in the statute, has committed a fraud upon the

probate court confirming the sale and his ward's estate.

### 3. Same—Setting Aside Sale.

Where a sale is made by a guardian of his ward's real estate and confirmed by the court, and the guardian delivers a deed to the purchaser, without having received the amount of the purchase price of the property sold, but the guardian enters into an agreement with the purchaser that the purchase price shall not be paid until his ward reaches his majority, and a quitclaim deed is obtained from the ward, held, such a sale will be vacated in an action by the ward or those in privity with him.

### 4. Venue — Action to Remove Cloud from Real Estate Located in Two or More Counties—Jurisdiction.

Under section 4672, Revised Laws 1910 (sec. 200, Okla. Ann. Stats. 1921), where real property, the subject of an action, consists of separate tracts situated in two or more counties, an action to remove instruments as clouds upon the title may be brought in either county in which any tract or part thereof of such land is situated.

Error from District Court, Wagoner County; Benjamin B. Wheeler, Judge.

Action by Emmett Roberts against W. G. Brockman, H. C. Brockman, and James H. Kennedy, to quiet title in real estate. Judgment in favor of Kennedy on cross-petition against defendant W. G. Brockman. Defendants W. G. Brockman and H. C. Brockman bring error. Judgment reversed, and cause remanded, with directions.

Benjamin C. Conner and Horace H. Hagan, for plaintiffs in error.

John C. Graves and Thos. H. Owen, for defendants in error.

KENNAMER, J. This action was instituted in the district court of Wagoner county, by Emmett Roberts, plaintiff, against W. G. Brockman and H. C. Brockman, defendants, on the 2nd day of February, 1918, to have canceled, vacated, and set aside certain conveyances executed by the plaintiff to the defendants to the following described lands, to wit:

"The south half of the northwest quarter and lots 4 and 5 in section three (3), township nineteen (19) north, range fourteen (14) east, in Tulsa county, Oklahoma;" and "Northwest quarter of the northwest quarter of section sixteen (16), township seventeen (17) north, range eighteen (18) east, in Wagoner county, Oklahoma."

James H. Kennedy, by order of the court, was made a party defendant to the action, and filed an answer and cross-petition asserting to be the owner of the 120 acres of land located in Tulsa county under a guardianship sale made by J. C. Casaver as the legal guardian of Emmett Roberts, the plaintiff in the action.

The cause was tried in May, 1919, and judgment entered by the court quieting title in Kennedy to the 120 acres of land located in Tulsa county and requiring Kennedy to pay to the plaintiff the sum of $2,010, the amount bid by Kennedy at the guardianship sale of the lands. Title to the 40 acres of land located in Wagoner county was quieted in W. G. Brockman, and judgment entered in favor of the plaintiff against W. G. Brockman for $1,119, which the court found to be due from Brockman to the plaintiff on the purchase price of the 40 acres of land, and rents from the 120 acres of land in Tulsa county.

This appeal is prosecuted by W. G. Brockman and H. C. Brockman to reverse the judgment. The questions presented under the various assignments of error are: The validity of the guardianship sale; the jurisdiction of the district court of Wagoner county over the 120 acres of land located in Tulsa county, and the correctness of the judgment between the parties under the facts as disclosed by the evidence in the record.

The material facts necessary to be considered in determining the questions presented, in substance, are: That Emmett Roberts, the plaintiff in the action, is a Creek freedman and the lands in controversy were received by him as his allotment. That during the minority of said allottee J. C. Casaver was appointed legal guardian of him and his estate. That the guardian in April, 1911, petitioned the county court of Wagoner county to sell the 120 acres of land involved in the action situated in Tulsa county, and that pursuant to an order of sale made by the court the guardian sold the 120 acres of land to James H. Kennedy for the sum of $2,010. The county court of Wagoner county on the 29th day of June, 1912, entered an order confirming the sale. The mother and stepfather of Emmett Roberts filed a protest against the confirmation of the sale and prosecuted an appeal to the district court of Wagoner county from the order of the county court confirming the sale. Upon the order of the confirmation being affirmed in the district court, an appeal was prosecuted to the Supreme Court. The appeal was, on or about the 1st of April, 1916, by the appellants dismissed and the cause was remanded to the county court of Wagoner county. That after the appeal was dismissed, J. C. Casaver, the guardian, caused an abstract of title of the lands sold to be

made and tendered the same to Kennedy, the purchaser. It appears that Kennedy, the purchaser, refused to consummate the sale by paying the amount of his bid to the guardian, but entered into an oral agreement with the guardian by which the guardian executed to Kennedy a guardian's deed to the lands. By the terms of the agreement the guardian was to remain in possession of the real estate until September, 1916, the date on which Emmett Roberts would be of age, according to the rolls of the Dawes Commission to the Five Civilized Tribes. Then a quitclaim deed was to be obtained from Emmett Roberts conveying the lands to Kennedy, the purchaser at the guardianship sale, for the purpose of curing any probable defects in the title. On the execution and delivery of the deed by Emmett Roberts, the allottee, the purchase money was to be paid by Kennedy.

It is clear from the record of the evidence introduced in the trial of the cause that Emmett Roberts arrived at his majority about the 1st day of September, 1916, and that after arriving at his majority, for a consideration of $1,800, he conveyed the lands in controversy to H. C. Brockman by warranty deed. The warranty deed from Roberts to H. C. Brockman was executed on October 5, 1916. It appears that H. C. Brockman subsequently conveyed the lands to W. G. Brockman. The trial court found that no fraud was committed by Brockman in obtaining the deed from Roberts conveying the lands in controversy, including the 120 acres in Tulsa county and the 40 acres in Wagoner county.

Counsel for the plaintiffs in error under their first assignment of error contend that the court erred in holding that the alleged guardianship sale of the 120 acres of land in Tulsa county was legally sufficient to pass the title to James H. Kennedy. It is apparent from the record that up until the date of the trial of this cause the amount of the bid of Kennedy, $2,010, had never been paid, and in this situation the guardianship sale had never been completed. It is true the sale had been properly confirmed and a guardian's deed executed and delivered upon the condition that the amount of the bid would be paid on the condition that a quitclaim deed be obtained from the minor allottee upon his arriving at his majority. But, under section 6567, Revised Laws 1910, the guardian is prohibited from entering into any such agreement for the sale of his ward's real estate. Under the statute all sales of real estate of wards must be for cash, or part cash, and deferred payments

not to exceed three years; all deferred payments to be secured by bond and mortgage on the real estate sold and such other additional security as the judge deems necessary. There is no serious contention made in this case that the statute was complied with. It is plain the sale was voidable, and the minor, on arriving at his majority, by executing a deed and conveying the lands to persons other than the purchaser at the guardian's sale and placing his grantee in possession of the land, effectively repudiated the guardianship sale. The rule is well established in this jurisdiction that a sale by guardian of his ward's real estate must be for cash, or part cash, and deferred payments secured in the manner provided for in the statute, supra. Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Langley v. Ford, 68 Okla. 83, 171 Pac. 471; McCoy v. Mayo, 73 Oklahoma, 174 Pac. 491; Bridges v. Rea, 64 Okla. 115, 166 Pac. 416; In re Standwaitie's Estate, 73 Oklahoma, 175 Pac. 542.

A sale made by guardian of his ward's real estate under an order of the probate court is not a completed sale until the purchaser accepts the deeds, the consideration is paid, and the terms of the order of sale complied with by the purchaser, and where the purchaser fails to comply with the terms of the sale, the sale proceedings may be avoided. Ennis v. Cator (Tex. Civ. App.) 174 S. W. 947.

It is a fraud upon the probate court confirming a guardian or judicial sale and the minor to deliver the deed without receiving the purchase price for the property sold, and such a transaction is a plain violation of the statute. In an action by the ward to vacate such sale against the purchaser, the conveyance delivered will be regarded as provisional and as not passing the title to the property. Vol. 16, R. C. L. p. 130, sec. 93; Washburn v. Green, 13 La. Ann. 332; International Wood Co. v. National Assurance Co. (Me.) 59 Atl. 544, 105 A. S. R. 288, 2 Ann. Cas. 356. It is obvious that the guardian's sale was never completed as provided by the statute, and that the oral contract to obtain title to the land by securing a deed from the minor on reaching his majority was an invalid and unenforceable contract. It necessarily follows that the court erred in quieting title in Kennedy.

The right to cancel and have vacated an instrument procured through fraud is not confined to the injured party himself, but those who are in privity with him may avail themselves of any rights such injured party had. Bethany Hospital Co. v. Philippi

(Kan.) 107 Pac. 530; Story's Equity Jurisprudence, vol. 2, sec. 967.

The next question presented by this appeal is that the court is without jurisdiction of the land in Tulsa county. But upon examination of section 4671 and 4672 of Revised Laws 1910 (sections 199 and 200, Okla. Ann. Stats. 1921), we are of the opinion that the action was properly instituted in Wagoner county and that the court had jurisdiction to determine the issues involved in the case. These sections of the statute are as follows:

"4671. Actions for the following causes must be brought in, the county in which the subject of the action is situated, except as provided in the next section: First. For the recovery of real property, or of any estate, or interest therein, or the determination in any form of any such right or interest. Second. For the partition of real property. Third. For the sale of real property under a mortgage lien, or other incumbrance or charge. Fourth. To quiet title, to establish a trust in, remove a cloud on, set aside a conveyance of or to enforce or set aside an agreement to convey real property.

"4672. If real property, the subject of an action, be an entire tract, and situated in two or more counties, or if it consists of separate tracts, situated in two or more counties, the action may be brought in any county in which any tract, or part thereof, is situated, unless it be an action to recover possession thereof and if the property be an entire tract, situated in two or more counties, an action to recover possession thereof may be brought in either of such counties; but if it consists of separate tracts, in different counties, the possession of such tracts must be recovered by separate actions brought in the counties where such tracts are situated. An action to compel the specific performance of a contract to sell real estate may be brought in the county where the land lies or where the defendants, or any of them reside or may be summoned."

This is an action invoking the equitable jurisdiction of the court by the plaintiff to remove certain instruments as clouds upon his title. All of the respective parties to the action filed pleadings invoking the jurisdiction of the court to grant them equitable relief. A court of equity having jurisdiction of the parties is vested with jurisdiction to release and discharge instruments which are a cloud upon the title of lands situated beyond the territorial jurisdiction of the court. Sharp v. Sharp, 65 Okla. 76, 166 Pac. 177; Remer v. MacKay, 35 Fed. 86; Lampkin v. Lovell (Ala.) 58 South. 258; Eaton v. McCall (Me.) 29 Atl. 1103; Baker v. Rockabrand (Ill.) 8 N. E. 456.

In such an action in equity by a person who holds the legal title to the land, though not in possession, he may maintain the action independently of the statute. Lair v. Myers, 71 Oklahoma, 176 Pac. 225. But we are clearly of the opinion in the instant case that the court had jurisdiction of the action under section 4672 of the statute, supra.

Having reached the conclusions that the guardianship sale and the deed executed by the guardian to Kennedy should have been vacated by the court, and the evidence disclosing that the plaintiff, Emmett Roberts, after reaching his majority, by a legal conveyance conveyed the legal and equitable title to the lands to H. C. Brockman and that H. C. Brockman had conveyed the same to W. G. Brockman, the judgment of the trial court must be reversed in so far as it quieted title to the 120 acres of land in Tulsa county in James H. Kennedy and for $2,010, and awarding the plaintiff $1,119 against W. G. Brockman. The cause is remanded to the district court of Wagoner county, with directions to enter judgment in favor of W. G. Brockman quieting his title to the 160 acres of land involved in the action.

JOHNSON, V. C. J., and NICHOLSON, BRANSON, and HARRISON, JJ., concur. KANE, J., concurs in conclusion reached.