STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-17-42 ✓

F.C. BEACON GROUP, INC., )
)
    Plaintiff/Counterclaim Defendant, )
)
v. )
)
CRAIG BLEANGER, RICHARD CRUMB, )
RACHEL ESCHLE, and BCE PARTNERS, )
LLC, )
)
    Defendants/Counterclaim Plaintiff, )
)
    and )
)
MEAGHAN FLOOD and ANCHOR )
RESEARCH, LLC, )
)
    Defendants. )

ORDER ON DEFENDANTS CRUMB
AND BCE PARTNERS' MOTION FOR
PRELIMINARY INJUNCTION

Before the Court is Defendants' BCE Partners and Richard Crumb's Motion for
Preliminary Injunction. Plaintiff F.C. Beacon Group is represented by Attorneys Graydon
Stevens, Timothy H. Norton, Raymond P. Austrotas, and Peter M. Vetere. Defendants Craig
Belanger, Richard Crumb, Rachel Eschele and BCE Partners are represented by Attorneys
Robert W. Kline and Jeffrey Snyder. Defendants Meaghan Flood and Anchor Research, LLC are
represented by Attorney Adrianne E. Fouts. The Court held hearing on the motion on January 30,
2018. Closing arguments were fully submitted to the Court on April 20, 2018.

I.   Background

This case revolves around a contract dispute between Plaintiff F.C. Beacon ("Beacon")
and its former employees Defendants Belanger, Crumb, Eschele, and Flood. Defendants

1

Belanger, Crumb, Eschele, and Flood each agreed to a Confidentiality, Inventions and Non-Solicitation Agreement (the "Agreement") with Beacon during their employment by Beacon. The Agreement contained the following Confidential Information clause:

> Confidential Information. Without the prior written consent of Beacon, you shall not, at any time, whether during or after the termination of your employment by Beacon, use any Confidential Information (as defined below) for the benefit of anyone other than Beacon, or disclose any Confidential Information to any person or party. You may, however, use or disclose Confidential Information as required by your obligations to beacon or as necessary or desirable (ad for the benefit of Beacon) in connection with Beacon's business (but all such permitted uses and disclosures shall be made under circumstances and conditions reasonably appropriate to preserve the Confidential Information as Beacon's confidential and proprietary information). "Confidential Information" means all information not generally known or available to the public or the trade which you have acquired or may acquire during your relationship with Beacon, and which relates to the present or potential customers, businesses, products and services of Beacon (including, without limitation, all Developments, as defined below), as well as any other information that Beacon may designate as confidential, but shall not include any such information obtained in good faith by you from sources other than Beacon, unless such sources have obtained such information subject to or in violation of an agreement to keep the information confidential.

The Agreement § 1. The Agreement's Non-Solicitation clause is as follows:

> Non-Solicitation. You and Beacon each acknowledge that your solicitation of customers and employees otherwise than with and for Beacon could cause Beacon irreparable damage. Accordingly, you agree that, during the period of your employment by Beacon and for a period of three (3) years from the date of termination of your employment with Beacon for any reason, you will not, without the prior written consent of Beacon: (i) solicit, service, accept orders from or otherwise have business contact with any person, organization or entity (or any subsidiary or affiliate of any person, organization or entity) who, at any time during your employment with Beacon, has been a customer or client or prospective customer or client of Beacon, if such contact could possibly directly or indirectly divert business from or adversely affect the business of Beacon; or (ii) in any way interfere with the contractual relations between Beacon and any of its officers, employees, consultants, subcontractors, customers, and clients including (for example) by hiring any officer employee or consultant of Beacon or soliciting or encouraging any officer, employee or consultant of Beacon to leave its employ for employment by or with any competitor of Beacon. If at any time any of the foregoing provisions of this Section 3 shall be deemed invalid or unenforceable or are prohibited by the laws of the state or place where they are to be performed or enforced, by reason of being vague or unreasonable as to

2

duration or geographic scope or scope of activities restricted, or for any other reason, such provisions shall be considered divisible and shall become and be immediately amended to include only such restrictions and to such extent as shall be deemed to be reasonable and enforceable by the court or other body having jurisdiction over this Agreement; and you and Beacon agree that the provisions of this Section 3, as so amended, shall be valid and binding as though any invalid or unenforceable provisions had not been included in this Agreement.

The Agreement § 3.

After leaving employment with Beacon on January 20, 2017, Defendants Belanger and Crumb established BCE Partners ("BCE"). Like Beacon, BCE provides management consulting services in four principal areas: strategy, mergers and acquisitions, marketing and sales support, and operations. Plaintiff brought this action to recover damages for breach of the confidential information and non-solicitation clauses of the Agreement. Defendants now move the court for a preliminary injunction, arguing that the threat of enforcement of the Agreement is causing irreparable injury and asking the Court to find that the Agreement is unenforceable.

II.    Choice of Law

The Court first looks to questions of choice of law. The Court rejects Defendants' argument that California law applies. Where a question of conflict of laws arises, a Maine Court gives "controlling effect to the law of the state which has the greatest contact or concern with, or interest in, the specific issue creating the choice-of-law problem before the court." *Beaulieu v. Beaulieu*, 265 A.2d 610, 617 (Me. 1970). Additionally, where there is a choice of law provision of a contract, the Court honors that choice of law, unless:

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

3

Restatement 2d of Conflict of Laws, § 187 (2nd 1988); *See Schroeder v. Rynel, Ltd.*, 1998 ME 259, ¶ 8, 720 A.2d 1164.

In this case, Crumb and BCE argue that Crumb is a California resident and BCE is a California company, and therefore California has a greater interest in the dispute than does Maine. However, Beacon is a Maine company and in connection with his employment with Beacon, Crumb signed the Agreement which contains a choice of law provision requiring the laws of Maine to apply to any dispute that arises out of the Agreement. The Court finds that the exceptions laid out in the Restatement do not apply here. It cannot find that Maine has "no substantial relationship to the parties or the transaction," nor can it find that California has a "materially greater interest" than Maine in the determination of the issues presented here. Because the dispute arises out of an agreement Crumb made with a Maine company, he agreed to be subject to the laws of Maine when he signed the agreement, and no exception to this general rule can be found, the Court finds that Crumb and BCE are bound by the laws of Maine.

III.     Standard of Review for Preliminary Injunctive Relief

In order for the Court to grant a motion for preliminary injunction, the moving party must show the each of the following four criteria:

> (1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility), and (4) that the public interest will not be adversely affected by granting the injunction.

*Ingraham v. University of Maine at Orono*, 441 A.2d 691, 693 (Me. 1982); *Bangor Historic Track, Inc. v. Department of Agriculture*, 2003 ME 140, ¶ 9, 837 A.2d 129, 132.

4

IV.    Discussion

As noted above, Defendants Crumb and BCE argue that because Crumb is a California resident and BCE is an LLC incorporated in California, and because non-solicitation agreements are unenforceable in California, the non-solicitation clause that Crumb signed with Plaintiff is unenforceable. Crumb and BCE further argue that the confidential information which the agreement prohibits them from using outside of Beacon is too broadly defined to be enforceable even if California law is inapplicable. Crumb and BCE further argue that they are caused more harm by the continued viability of the non-solicitation language than Plaintiff would be by a declaration that it is unenforceable, and that such a declaration would not be contrary to public interest. For that reason, Crumb and BCE seek preliminary injunctive relief from enforcement of the non-compete clause of the letter agreement. Plaintiff disputes Defendant Crumb and Defendant BCE's characterization of the law and its application.

The Court has found that California law does not apply to this matter. With respect to the other argument made by Defendants about their chances of prevailing, the Court need not determine in this Motion whether or not Defendants Crumb and BCE are more likely than not to succeed on the merits on a claim that the Agreement is unenforceable, as Defendants have not shown irreparable injury.[1] Irreparable injury is found where there is no adequate remedy at law. *See Bangor Historic Track, Inc.*, 2003 ME 140, ¶ 10, 837 A.2d 129. The argument seems to be that conducting business which creates a risk that a non-compete clause will be found to be enforceable amounts to irreparable injury. Defendants assert that the Agreement is unenforceable, but argue that should the Court find in a later proceeding (or in a different

---

[1] A motion for preliminary injunction is only appropriate where a party is arguing that it is likely to succeed on the merits of a claim. It is not clear from Defendants Crumb and BCE's motion on which claim they believe they will succeed. Defendants appear to argue that they will succeed in showing that the Agreement was unenforceable, however the counterclaim that is closest to presenting such a claim is for breach of contract.

5

motion) that the Agreement is enforceable, Defendants Crumb and BCE would be liable for breach of contract and thus irreparably harmed. The Court finds that the uncertainty and risk of a possible breach of contract that Defendants Crumb and BCE describe are not irreparable injury, but rather describe the very case or controversy that provides the Court with subject-matter jurisdiction.

Furthermore, Defendants Crumb and BCE have been able to articulate separate claims for which, if successful, they could obtain monetary damages. For this additional reason, the harm is not irreparable. The Court therefore denies the motion without considering the other requirements for obtaining an injunction.

V.    Conclusion

The Court denies Defendants Crumb and BCE's Motion for Preliminary Injunction.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE: 5/8/18

Michaela Murphy
Justice, Superior Court

Entered on the Docket: 5/8/18
Copies sent via Mail___ Electronically ✓

6

F.C. Beacon Group, Inc.                                    **BCD-CV-2017-42**

v.

Craig Belanger, Richard Crumb,
Rachel Eschle & BCE Partners, LLC


and


Meghan Flood & Anchor Research, LLC




## Plaintiff

F.C. Beacon Group, Inc.                    Graydon Stevens, Esq.
                                           53 Exchange St
                                           Portland, ME 04112-0597


## Defendants

Anchor Research. LLC                       Adrianne Fouts, Esq.
Meaghan Flood                              84 Marginal Way, Suite 600
                                           Portland, ME 04101-2480


Craig Belanger                             Robert Klien, Esq.
Richard Crumb                              120 Exchange St. Suite 207
Rachel Eschele                             Portland, ME 04112-7859
BCE Partners, LLC

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-17-42

F.C. BEACON GROUP, INC., )
)
    Plaintiff/Counterclaim Defendant, )
)
v. )
)
CRAIG BELANGER, RICHARD CRUMB, )
RACHEL ESCHLE, and BCE PARTNERS, )
LLC, )
)
    Defendants/Counterclaim Plaintiff, )
)
    and )
)
MEAGHAN FLOOD and ANCHOR )
RESEARCH, LLC, )
)
    Defendants. )

ORDER ON DEFENDANTS CRUMB
AND BCE'S MOTION TO AMEND
COUNTERCLAIM AND PLAINTIFF'S
MOTION TO DISMISS COUNTERCLAIM

Before the Court is Plaintiff F.C. Beacon Group, Inc.'s Motion to Dismiss Counterclaim Count III ("Fraud and Misappropriation") as well as Defendants Craig Belanger, Richard Crumb, Rachel Eschle, and BCE Partners, LLC's ("BCE Defendants") Motion to Amend the Counterclaim which they state was brought in response to Plaintiff's Motion to Dismiss Count III of their Counterclaim. Plaintiff is represented by Attorney Timothy Norton and Attorney Raymond Ausrotas and BCE Defendants are represented by Attorney Robert Kline. For reasons stated below, the Court grants the Plaintiff's Motion to Dismiss in part and denies it in part; and grants the Defendants' Motion to Amend.

1

## ANALYSIS

Plaintiff's Motion to Dismiss is brought under Rule 12(b)(6) and Rule 9(b) of the Maine Rules of Civil Procedure. Plaintiff accurately describes the factual allegations brought by BCE Defendants in support of Count III of the Counterclaim as combining two tort claims (fraud and invasion of privacy by misappropriation of names) consisting of four paragraphs numbered 20, 30, 31 and 32. The Court further agrees that these factual allegations fall short of the standard requiring that claims of fraud must be stated with particularity with respect to the "circumstances constituting fraud or mistake." *Beck v. Sampson,* 158 Me. 502, 510 (Me. 1962). [1]

BCE Defendants seem to have conceded this lack of particularity in that their Opposition addresses only Plaintiff's arguments with respect to the misappropriation of names tort, and is silent as to the alleged deficiencies in their pleading as to the fraud allegations. The Court will therefore address BCE Defendants' arguments as to the tort of invasion of privacy by the misappropriation of name only, and will grant the Motion to Dismiss Count III of the Counterclaim insofar as it alleges that Plaintiff committed fraud.

With respect to the misappropriation of names tort, the Court reviews this claim under Rule 12(b)(6) in the light most favorable to the BCE Defendants. Plaintiff argues that even under this standard the Court should dismiss what remains of Count III as it fails to allege that Plaintiff's alleged appropriation of their names caused them any injury. They concede that BCE Defendants have appropriately pleaded that the Plaintiff's conduct conferred a benefit on the Plaintiff, but Plaintiff argues that BCE Defendants still fail to allege that the Plaintiff's conduct caused any injury or damage to the BCE Defendants.

---

[1] The Court also agrees that Count III of the Counterclaim fails to allege the fifth element of fraud, namely that the Defendants justifiably relied upon any misrepresentation and as a result suffered damage due to the Plaintiff's conduct. *Glynn v. Atlantic Seaboard Corp.,* 1999 ME 53.

2

BCE Defendants respond by noting that "all reasonable inferences must be indulged at this stage" under the Rule 12(b)(6) standard and that they should be allowed to amend their Counterclaim to add paragraphs 33 and 36. While BCE Defendant's Motion to Amend was brought in response to a Motion to Dismiss, and therefore could, in the discretion of the Court, be dismissed, it was also brought well within the deadline to file amendments to the pleadings. The Court is persuaded by BCE Defendants' argument that this tort is in the nature of a violation of a property right, and that the allegations of injury found in their Amended Counterclaim are sufficient to survive a motion to dismiss brought under Rule 12(b)(6).

The entry will be: Plaintiff's Motion to Dismiss Count III of the Counterclaim is dismissed insofar as it alleges fraud, but denied insofar as it alleges Misappropriation of Names. BCE Defendants' Motion to Amend is granted. This Combined Order may be noted on the Docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

_5/10/18_
**DATE**

_[signature]_
**SUPERIOR COURT JUSTICE**
**BUSINESS AND CONSUMER COURT**

Entered on the Docket: _5-10-18_
Copies sent via Mail __ Electronically ✓

3

F.C. Beacon Group, Inc.                          **BCD-CV-2017-42**

     v.

Craig Belanger, Richard Crumb,
Rachel Eschle & BCE Partners, LLC


     and


Meghan Flood & Anchor Research, LLC


## Plaintiff

F.C. Beacon Group, Inc.                    Graydon Stevens, Esq.
                                           53 Exchange St
                                           Portland, ME 04112-0597


## Defendants

Anchor Research. LLC                       Adrianne Fouts, Esq.
Meaghan Flood                              84 Marginal Way, Suite 600
                                           Portland, ME 04101-2480


Craig Belanger                             Robert Klien, Esq.
Richard Crumb                              120 Exchange St. Suite 207
Rachel Eschele                             Portland, ME 04112-7859
BCE Partners, LLC

F.C. BEACON GROUP, INC., )
)
    Plaintiff/Counterclaim Defendant, )
)
v. )
)
CRAIG BLEANGER, RICHARD CRUMB, )
RACHEL ESCHLE, and BCE PARTNERS, )
LLC, )
)
    Defendants/Counterclaim Plaintiff, )
)
and )
)
MEAGHAN FLOOD and ANCHOR )
RESEARCH, LLC, )
)
    Defendants. )

ORDER ON DEFENDANTS' MOTION
TO QUASH SUBPOENA, PLAINTIFF'S
MOTION TO QUASH SUBPOENA AND
DEFENDANTS' MOTION TO COMPEL,
AND MOTIONS FOR
CONFIDENTIALITY ORDER

Before the Court are Defendants' Joint Objection and Motion to Quash Subpoena,

Plaintiff's Opposition to and Motion to Quash Subpoena along with Defendants' Motion to

Compel, and motions for confidentiality order filed by both Plaintiff and Defendants. Plaintiff

F.C. Beacon Group is represented by Attorneys Graydon Stevens, Timothy H. Norton, Raymond

P. Austrotas, and Peter M. Vetere. Defendants Craig Belanger, Richard Crumb, Rachel Eschele

and BCE Partners are represented by Attorneys Robert W. Kline and Jeffrey Snyder. Defendants

Meaghan Flood and Anchor Research, LLC are represented by Attorney Adrianne E. Fouts.

I.     Background

Plaintiffs have brought this action seeking recovery for the breach of a non-solicitation

agreement, and other causes of action arising from Defendants' resignation from employment by

Plaintiff and establishment of new businesses that provide similar consulting services to Plaintiff.

1

Before the Court are three distinct discovery disputes. Defendants seek to quash a subpoena seeking their cell phone records from Verizon for a period of a year and a half including time both before and after their resignation from employment by Plaintiff. Plaintiff seeks an order of the Court quashing a subpoena for the transcript of the Plaintiff's owner from an earlier action and Defendants seek order of the Court compelling production of the transcript. Both parties seek entry of largely similar confidentiality orders, distinguishable by who would be privy to certain confidential information.

The question underlying all of these disputes is what information is protected from disclosure by M.R. Civ. P. 26(c)(7):

> Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, any justice or judge of the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including without limitation one or more of the following: …(7) that a trade secret or other confidential research development, or commercial information not be disclosed or be disclosed only in a designated way.

There is a presumption that discovery need not be kept confidential which the parties must overcome by showing good cause based on specific demonstration of potential harm in order for a protective order to issue. *Northern Mattress, Inc. v. Town of Fairfield*, CV-94-154, 1995 Me. Super. Lexis 439 (Dec. 13, 1995). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *See* 8 Wright, Miller & Marcus, *Federal Practice and Procedure:* Civil 2d § 2035. The Court is afforded broad discretion in determining whether a protective order is appropriate. *See Northern Mattress, Inc.*, *4; citing Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984); *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993); 8 Wright, Miller & Marcus, *Federal Practice and Procedure*: Civil 2d § 2036.

2

II.    Discussion

A. Defendants' Joint Motion to Quash Subpoena

Defendants move the Court to Quash Plaintiff's subpoena issued to Verizon seeking phone records for five phone numbers between July 1, 2016 and January 10, 2018.[1][2] Four of the five phone numbers are for the cell phones of four individual Defendants. Defendants argue that providing over a year's worth of telephone records, including all personal phone calls made, is overbroad, unduly burdensome, and calculated only to inconvenience and harass the Defendants. Furthermore, Defendants argue that Plaintiffs would potentially learn of confidential communication with clients who are not implicated in this action. Defendants argue that the records subpoenaed include confidential commercial information. Plaintiffs oppose the Motion arguing that the information concerning who Defendants were in contact with both before and after they resigned is highly relevant to the case.

Maine Rule of Civil Procedure 45(c)(2) requires that "a party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena." M.R. Civ. P. 45(c)(2).[3] Where the subpoena does impose an undue burden on the person subject to the subpoena, or where the subpoena "requires disclosure of a trade secret or other confidential research, development, or

---

[1] Plaintiff argues that Defendants do not have standing to move the Court to quash the subpoena because the subpoena seeks documentation from the cell phone providers, not from Defendants individually. Federally, F.R. Civ. P. 45 has been interpreted to confer standing on an individual who has a demonstrated personal interest in the information being subpoenaed. *U.S. Bank Nat'l Ass'n v. James*, 264 F.R.D. 17, 19 (D. Me. 2010). In this case, the phone records the Plaintiffs seek are for cell phones belonging to the Defendants. The Court finds that Defendants have standing to challenge the subpoenas.

[2] Defendants also note that the subpoena was delivered to counsel on January 18, 2018, only eight days before the response date of January 26, 2018 and without accompanying electronic copy as is required of Business and Consumer Court filings. Defendants argue that the subpoena is procedurally deficient.

[3] Plaintiff notes that the question of whether a request is overly burdensome concerns the burden placed upon the subpoenaed party, not a party claiming a privilege. In this case, Verizon has not expressed to the Court that the request is unduly burdensome.

3

commercial information", the Court may quash the subpoena on timely motion. M.R. Civ. P. 45(c)(3)(A)(iv); M.R. Civ. P. 45(c)(3)(A)(iv)(B)(i).

In *Chabot-Bucher v. John Grover & Dead River Co.*, the defendant was driving a truck that collided with a bicycle as he was on the phone with his attorney for an unrelated matter. *Chabot-Bucher v. John Grover & Dead River Co.*, CV-16-0222, Me. Super. Lexis 178, *1 (June 30, 2017). The attorney sought a court order quashing a subpoena for one month of phone records to his work cell phone. *Id.* *2. The court found that a request for all phone and text messages to the attorney's work cell phone, potentially including "information reflecting contacts between [the attorney] and other individuals and/or clients who are unrelated to this case [was] not reasonably calculated to lead to discovery of admissible evidence in this matter. M. R. Civ. P. 26(b)(l)." *Id.* In that case, the court quashed the subpoena in part, essentially narrowing the scope of the subpoena. *Id.**4-5.

Even more so than in *Chabot-Bucher*, in this case, the subpoena is very broad. However, the phone records being subpoenaed in this case are seemingly more likely to produce admissible evidence than were the phone records in *Chabot-Bucher*. The subpoena in question seeks a year and a half's worth of phone records for four of the defendants' phones. This potentially includes personal phone calls and text messages, as well as phone calls and messages from clients who may not be implicated in this action, forcing Defendants to turn over valuable client information.

If the Court does not quash the subpoena in its entirety, Defendants ask the Court to limit the subpoena. Based upon an order in a similar case from the District Court for the Eastern District of Missouri, Defendants ask the Court to require Plaintiffs to provide phone numbers of all clients and potential clients relevant to the case and seek any phone records between the

4

Defendants' numbers and the provided numbers during the requested period. *See Agxplore Int'l, LLC v. Shelley*, No. 1:12-CV-16 SNJL, 2013 U.S. Dist. Lexis 3265.

The Court grants Defendants' request for a narrowing of the subpoena request. The Court finds the current subpoena request overly broad and orders Plaintiff to provide the phone numbers of all clients, potential clients, and Defendants between which Plaintiff seeks phone records.

### B. Plaintiff's Opposition to and Motion to Quash BCE's Subpoena/Defendant's Motion to Compel Production of Farrah Deposition Transcript

Defendant BCE issued Plaintiff a subpoena duces tecum for a transcript of a deposition taken in 2008 of Farrah, owner of Plaintiff, from a separate legal action. Because Plaintiff did not have easy access to the transcript, Defendants coordinated delivery of the transcript from opposing counsel in the earlier action to Plaintiff's counsel on the belief that Plaintiff would then provide a copy to Defendants.[*] When Plaintiff did not share the transcript with Defendants, Defendants subpoenaed the transcript. Plaintiff objects[*] and asks the Court to quash the subpoena arguing that a subpoena is not the proper procedural mechanism for discovery of the transcript and because production of the transcript without a confidentiality order in place would unduly burden Plaintiff because it would cause the release of confidential information. Plaintiff does not detail what confidential information is contained in the transcript or how its production would cause undue burden.

---

[*] Defendants allege that Plaintiff intimated that they would be able to work out the issue of the transcript without a discovery hearing. Plaintiffs have not asserted whether they filed a formal request for production of documents including the transcript prior to issuing the subpoena.

[*] As noted by BCE, Plaintiff filed its objection to subpoena and motion to quash after the deadline for objection. M.R. Civ. P. 45(c)(2)(B).

5

Unlike the motion to quash above, this subpoena was issued to a party to the lawsuit rather than to a third party. Plaintiffs argue that the Court should not permit the Defendants to use a subpoena rather than seek the transcript through a request for production of documents pursuant to M.R. Civ. P. 34. There is a dearth of Maine caselaw concerning the comparative uses of a request for production of documents pursuant to M.R. Civ. P. 34 and a subpoena duces tecum pursuant to M.R. Civ. P. 45. Plaintiffs cite to 1993 Advisory Notes on M.R. Civ. P. 45 stating that subpoenas are meant to be used to obtain documents in the possession of non-parties.[*] However, that does not necessarily mean that subpoenas may only be issued to nonparties. Both Rules 34 and 45 substantially track their federal counterpart. For that reason, the Court views federal caselaw on the issue as persuasive.

Defendants cite extensively to a case from the United States District Court for the District of New Mexico. The overall trajectory of the quoted law is that federal courts have consistently allowed the issuance of subpoenas to parties to the suit in certain circumstances. *United States v. 2121 Celeste Rd. SW*, 307 F.R.D. 572 (D.N.M. 2015). However, the beginning of the quoted section reads: "A majority of district courts have held, however, that a subpoena may be served on another party so long as it is not used to circumvent rule 34 or the other discovery rules." *Id.* 588. Additionally, one of the District Courts taking the minority view that F.R. Civ. P. 45 is applicable only to non-parties is Massachusetts, which held that "it is evident to this Court that Rule 45, to the extent it concerns discovery, is still directed at non-parties and that Rule 34 governs the discovery of documents in the possession or control of the parties themselves." *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 100 (D. Mass. 1996).

---

[*] However, as argued by Defendants, the advisory note goes on to explain that the changed language was meant to "spare the necessity of a deposition of the custodian of evidentiary material required to be produced." M.R. Civ. P. 45, advisory committee's notes 1993.

6

Regardless of whether the Law Court would choose to adopt the majority or the minority view on whether M.R. Civ. P. 45 may be used as a tool for obtaining documents from and/or appearances of parties to the action, there appears to be broad federal agreement that Rule 45 should not be used to circumvent Rule 34. In this case, Defendants argue that they sought the deposition transcript for the preliminary injunction hearing, and time did not permit a request for production of documents prior to the date of hearing. Defendants issued the subpoena on January 12, 2018 in hopes of receipt by January 30, 2018. Defendants contend that this was therefore not an "attempt to subvert." The Court accepts the representation that Defendants issued the subpoena because there was insufficient time to seek the transcript through Rule 34 before the January 30, 2018 hearing.

As to Plaintiffs argument that it would be unduly burdened by the production of the transcript without a confidentiality order in place, Defendants respond that there is a confidentiality order in place pursuant to the scheduling order, and that whatever confidentiality order is entered by the Court pursuant to the parties' motions for entry of such would apply to the transcript. Without further explanation by Plaintiff as to the confidential nature of the transcript and the undue burden that could be caused by its production, the Court finds that the transcript is discoverable.

C. Plaintiff's Motion for Entry of Discovery Confidentiality Order

Plaintiff and Defendants separately move the Court for entry of a confidentiality order. Both parties have submitted proposed confidentiality orders. The submitted confidentiality orders are largely the same, both based upon the Court's form order, with one notable exception. The parties dispute who should be permitted to review documents deemed by either party to be "CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER". Plaintiff seeks a confidentiality

7

order that allows the parties to designate representatives to review confidential documents. Defendants seek a confidentiality order allowing designation of certain documents to a second, heightened level of confidentiality as reviewable by "attorney's eyes only".

Plaintiff argues that no attorney, or individual employee for that matter, has the requisite knowledge of customer relations and business operations to be able to properly review all of the confidential documents. Plaintiff contends that allowing each party to designate an appropriate representative to review documents according to the subject of the document would be the most effective process. Furthermore, Plaintiff argues that substantial due process rights are implicated by denying a party the right to review discovery documents and denying an attorney the ability to speak openly with his or her client about the discovered documentation. Plaintiff cites to a case out of the D.C. Circuit Court of Appeals finding that a court abused its discretion by entering a protective order which was understood to prevent a party's counsel from discussing the information obtained in discovery with that party. "District courts must be equally chary of issuing protective orders that restrict the ability of counsel and client to consult with one another during trial or during the preparation therefor. Such orders arguably trench upon constitutional interests at least as important as those infringed by restrictions on public dissemination of information." *Doe v. District of Columbia*, 697 F.2d 1115, 1119 (D.C. Cir. 1983).

Defendants, on the other hand, argue that the documents that Plaintiff seeks to discover, including Defendant's cell phone records, are highly proprietary. Defendants argue that information obtained may include names of Defendants clients and potential clients, and other confidential information. Defendants also argue that allowing for a separate "attorney's eyes

8

only" designation would prevent disputes that may arise by allowing parties broad discretion in designating their "representative".

Neither party has clearly outlined for the Court what confidential information warrants such protections beyond those offered by a standard confidentiality order. Therefore, the Court enters a standard confidentiality order.

III.    Conclusion

Defendant's Motion to Quash the Verizon Subpoena is granted in part and denied in part. The Court orders Plaintiff to specify the phone numbers of any client, potential client, or other Defendant for which it seeks record of communication with originally subpoenaed phone numbers.

The Court denies Plaintiff's Motion to Quash the Farrah Deposition Transcript Subpoena, and grants Defendants' Motion to Compel the Transcript.

The Court enters a separate confidentiality order.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE:     5/4/1c

Michaela Murphy
Justice, Superior Court

Entered on the Docket: 5/7/18
Copies sent via Mail___Electronically ✓

9

F.C. Beacon Group, Inc.                                    **BCD-CV-2017-42**

    v.

Craig Belanger, Richard Crumb,
Rachel Eschle & BCE Partners, LLC


    and


Meghan Flood & Anchor Research, LLC




## Plaintiff

F.C. Beacon Group, Inc.                    Graydon Stevens, Esq.
                                           53 Exchange St
                                           Portland, ME 04112-0597


## Defendants

Anchor Research. LLC                       Adrianne Fouts, Esq.
Meaghan Flood                              84 Marginal Way, Suite 600
                                           Portland, ME 04101-2480



Craig Belanger                             Robert Klien, Esq.
Richard Crumb                              120 Exchange St. Suite 207
Rachel Eschele                             Portland, ME 04112-7859
BCE Partners, LLC